# Illinois Official Reports

## Appellate Court

*Segobiano-Morris v. Grayslake Community Consolidated School District No. 46*,
2015 IL App (2d) 140822

| | |
|---|---|
| Appellate Court Caption | ANGELA SEGOBIANO-MORRIS, Plaintiff-Appellant, v. GRAYS-LAKE COMMUNITY CONSOLIDATED SCHOOL DISTRICT No. 46, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-14-0822 |
| Filed | May 28, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 13-CH-3018; the Hon. Mitchell L. Hoffman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellant.<br><br>Kevin B. Gordon and A. Lynn Himes, both of Scariano, Himes & Petrarca, Chtrd., of Chicago, for appellee. |

Panel          JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Zenoff and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff, Angela Segobiano-Morris, was employed as a teacher by defendant, Grayslake Community Consolidated School District No. 46 (the District). In 2013, plaintiff received an "unsatisfactory" rating on her performance evaluation and, due to a reduction in force (RIF), the District dismissed plaintiff at the end of the school term. Plaintiff then brought a complaint for declaratory judgment and injunctive relief, alleging that her dismissal violated the teacher-employment provisions of the School Code (105 ILCS 5/24 (West 2012)) and seeking her reinstatement. The trial court dismissed the complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619(a)(9) (West 2012)). For the reasons that follow, we affirm.

¶ 2                       I. BACKGROUND

¶ 3      According to plaintiff's complaint, she was employed as a tenured teacher at an elementary school in the District. See 105 ILCS 5/24-11(c) (West 2012) (stating that tenure, or contractual continued service, is generally obtained after four academic years of full-time service). On April 10, 2013, plaintiff received the following letter from the District:

> "We regret to advise you that the Board of Education of Community Consolidated School District 46, Lake County, Illinois, pursuant to Section 24-12 of the *Illinois School Code*, has determined that you are to be honorably dismissed effective as of the end of the 2012-[ ]13 school term and not reemployed for the 2013-[ ]14 school term. The reason for your dismissal is the decision of the Board to decrease the number of teachers due to economic necessity. Accordingly, your employment in and services to the School District shall terminate at the end of the school day on June 6, 2013." (Emphasis in original.)

Plaintiff alleged that it was "common practice" for school boards to issue similar warning letters to teachers but that their dismissals "[we]re not made effective" if sufficient funding became available before the start of the following school term. In August, the District advertised an opening for an elementary school teacher and hired a candidate at the start of the school term in September. Ultimately, plaintiff was not recalled. Plaintiff's complaint sought her reinstatement and damages in the amount of several weeks' lost wages.

¶ 4      The District filed a motion to dismiss under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)). In its motion, the District noted that on April 10, 2013, the school board unanimously approved a resolution calling for a RIF of 20 teachers at the end of the 2012-13 school term, for reasons of economic necessity. Based on performance evaluations, teachers are categorized in groups from 1 to 4, with 4 being the highest. 105 ILCS 5/24-12(b), 24A-5 (West 2012). Groupings control the sequence of dismissals and recalls in the event of a RIF. During the 2012-13 school year, plaintiff received a "Needs Improvement or Unsatisfactory" rating on her performance evaluation, which placed her in group 2.

¶ 5        Attached to the District's motion was a list of the 20 teachers and their groupings. Of the 20 teachers on the list, 19 were in group 3; plaintiff was the only teacher in group 2. The District issued the letter to plaintiff indicating that, due to the RIF, her employment would be terminated at the end of the 2012-13 school term. The District contended that plaintiff did not have the right to be recalled, because she was a group 2 teacher. Thus, according to the District, plaintiff was honorably dismissed at the end of the school term and not recalled, in accordance with section 24-12(b) of the School Code (105 ILCS 5/24-12(b) (West 2012)).

¶ 6        Plaintiff filed a response to the District's section 2-619(a)(9) motion, alleging, for the first time, that the District's claimed need for a RIF was "pretextual." According to plaintiff, the District could not have in good faith known its funding levels until the summer of 2013, after it had already dismissed plaintiff.

¶ 7        On May 8, 2014, the trial court conducted a hearing on the District's motion. A transcript of the hearing was not included in the record. The trial court's written order states that the court found that the District honorably dismissed plaintiff in accordance with the procedures set forth in section 24-12(b) of the School Code. In addition, the trial court specifically noted that plaintiff had failed to support her contention that the District's claimed need for a RIF was a pretext for her dismissal. Accordingly, the trial court granted the District's motion and dismissed plaintiff's complaint. Plaintiff's motion to reconsider was denied and plaintiff timely appealed.

¶ 8                                    II. ANALYSIS

¶ 9        As noted, plaintiff appeals the involuntary dismissal of her complaint under section 2-619(a)(9). She contends that the trial court erred when it determined that the District complied with the School Code. First, plaintiff argues that, pursuant to the School Code, the District failed to honorably dismiss her and, further, that she should have been recalled. Second, plaintiff asserts that the trial court's interpretation of section 24-12(b) cannot be reconciled with the School Code as a whole.

¶ 10       Initially, we note that plaintiff's complaint was dismissed pursuant to section 2-619(a)(9) of the Code, not section 2-615 (735 ILCS 5/2-615 (West 2012)) as asserted in plaintiff's brief. Accordingly, we will address plaintiff's arguments under the proper standard.

¶ 11       A motion to dismiss under section 2-619(a)(9) admits the legal sufficiency of the complaint but raises defenses or other affirmative matters that defeat the action. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. A defendant's compliance with the controlling statute is an "affirmative matter" warranting dismissal under section 2-619(a)(9). *Hayes v. M&T Mortgage Corp.*, 389 Ill. App. 3d 388, 392 (2009). We review *de novo* the trial court's dismissal under section 2-619(a)(9) (*Patrick Engineering*, 2012 IL 113148, ¶ 31), and we may affirm the dismissal on any basis supported by the record (*Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004)).

¶ 12       In Illinois, the employment of public school teachers in school districts outside of Cook County is regulated by the School Code (105 ILCS 5/art. 24 (West 2012)). As with all statutes, when we construe the School Code, our goal is to ascertain and give effect to the legislature's intent. *Frakes v. Peoria School District No. 150*, 2014 IL App (3d) 130306, ¶ 12 (citing *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15). In so doing, "[w]e view the statute as a whole and give the language its plain

and ordinary meaning, which is the most reliable indicator of the legislature's intent." *Id.* When the language of a statute is unambiguous, it will be applied as written without resort to extrinsic aids. *Doe v. Hinsdale Township High School District 86*, 388 Ill. App. 3d 995, 1001 (2009).

¶ 13 This case focuses on the trial court's construction and application of section 24-12(b) of the School Code. Section 24-12(b) sets forth the procedure for dismissal "as a result of a decision of a school board to decrease the number of teachers employed by the board" (105 ILCS 5/24-12(b) (West 2012)), commonly known as a RIF. Under the School Code, teachers are evaluated at least once every two years (105 ILCS 5/24A-5 (West 2012)) and then grouped accordingly (105 ILCS 5/24-12(b) (West 2012)). Qualified, full-time teachers are categorized as follows: "[e]xcellent" teachers are placed in group 4; "[p]roficient or [s]atisfactory" teachers are placed in group 3; and teachers who "[n]eed[ ] improvement" or are "[u]nsatisfactory" are placed in group 2. *Id*. Teachers in group 1 are either part-time teachers, who are ineligible for tenure, or full-time teachers who have yet to be evaluated. *Id*. As noted, plaintiff was a group 2 teacher.

¶ 14 Plaintiff's first argument, that the trial court erred because the District failed to comply with the School Code when it dismissed and did not recall plaintiff, implicates two key provisions of section 24-12(b). We refer to them as the "dismissal provision" and the "recall provision." The dismissal provision, which applies once the school board decides that a RIF is required, has two components. First, teachers facing an honorable RIF dismissal are entitled to written notice of their termination 45 days prior to the end of the school term. 105 ILCS 5/24-12(b) (West 2012). Second, "teachers must be dismissed in the order of their groupings, with teachers in grouping one dismissed first and teachers in grouping 4 dismissed last." *Id*.

¶ 15 With respect to the dismissal provision of section 24-12(b), plaintiff concedes that she was timely served with the statutorily required notice. The record also demonstrates that plaintiff was dismissed at the same time as 19 other teachers, all of whom were in group 3. Plaintiff does not argue that the District failed to notify her of her dismissal or that a group 1 teacher was retained while plaintiff was dismissed. Accordingly, we agree with the trial court that the District complied with the dismissal provision.

¶ 16 Next, we address plaintiff's contention that she had "recall rights," *i.e.*, the right to be recalled before a new teacher was hired. The recall provision of section 24-12(b) states that any vacancies for the following school term or within one calendar year "must be tendered to the teachers so removed or dismissed who were in *groupings 3 or 4* of the sequence of dismissal and are qualified to hold the positions." (Emphasis added.) 105 ILCS 5/24-12(b) (West 2012). While qualified teachers in groups 3 and 4 are entitled to be recalled, there is no similar provision for teachers in groups 1 and 2. Based on the plain language of the statute, we may presume that the exclusion of group 1 and group 2 teachers was intentional. See *In re Consensual Overhear*, 323 Ill. App. 3d 236, 240 (2001) (stating that, "[u]nder the rule of *expressio unius est exclusio alterius*, when an act lists things to which it refers, the court may infer that any omissions were intended as exclusions"). Accordingly, because plaintiff was a group 2 teacher when she was dismissed, she did not have the right to be recalled. We, therefore, reject plaintiff's argument; we agree with the trial court that the District complied with the recall provision.

¶ 17 We also reject plaintiff's bare assertion that the District violated section 24-12(b) when it hired a "replacement" teacher in violation of plaintiff's "statutory priority rights" as a member

- 4 -

of group 2. Plaintiff merely states this proposition and makes no attempt to support it with analysis or authority, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008). Although we would be within our rights to deem the argument forfeited for want of meaningful development (*Sexton v. City of Chicago*, 2012 IL App (1st) 100010, ¶ 79), we choose to address it.

¶ 18   The crux of plaintiff's claim appears to be that the teacher hired in September 2013 was a group 1 teacher over whom plaintiff, a group 2 teacher, necessarily had superior employment rights. In making this claim, plaintiff has conflated the right not to be *dismissed* in favor of a group 1 teacher with the right to be *recalled* before any new teacher is hired. The former is well established in section 24-12(b); the latter has no basis in the statute. As we have just discussed, following a RIF, nothing in section 24-12(b) provides for recalling a group 2 teacher either in general or based on grouping. That the District hired another teacher at the beginning of the 2013-14 school term was, therefore, irrelevant because plaintiff did not have the right to be recalled *at all. Cf. Frakes*, 2014 IL App (3d) 130306, ¶ 15 ("Contrary to the plaintiffs' argument, there is nothing in this statutory scheme to suggest that whether RIF dismissals are valid is contingent on the number of vacancies for the following school term.").

¶ 19   Plaintiff's second argument, that the trial court's "interpretation of section 24-12(b) cannot be reconciled with the statutory provision as a whole," also lacks merit. Plaintiff generally argues that the 2011 amendment to the School Code, which provided for the RIF dismissal and recall procedures (see Pub. Act 97-8, § 5 (eff. June 13, 2011)), violates public policy.

¶ 20   As plaintiff notes, this system of grouping teachers did not exist prior to the 2011 amendment, which made substantial revisions to the School Code. Under the pre-amended version of the School Code, a school board was required to lay off all untenured teachers before it could lay off any qualified tenured teacher. 105 ILCS 5/24-12 (West 2008). In addition, tenured teachers had the all-but-unqualified right to be recalled if funding became available (see *id.*), as plaintiff alleged in her complaint. But the 2011 amendment removed tenure as the main consideration in layoffs and instead shifted the primary focus to teacher performance and grouping. Grouping, in turn, now governs both the sequence of layoffs and any subsequent recall rights. Although this change altered the nature and scope of public school teachers' tenure, it was undoubtedly a public policy matter for the legislature (*Johnson v. Board of Education of Decatur School District No. 61*, 85 Ill. 2d 338, 345-47 (1981)), and we must defer to its judgment (*Board of Education of Dolton School District 149 v. Miller*, 349 Ill. App. 3d 806, 812 (2004)). As it pertains to this case, we reiterate that, under the present version of section 24-12(b), even though plaintiff was tenured, she did *not* have the statutory right to be recalled after she was honorably dismissed as a group 2 teacher. See *Frakes*, 2014 IL App (3d) 130306, ¶ 18 (noting that "tenure is no longer protective to the extent the plaintiffs allege"); *Bart v. Board of Education*, 256 Ill. App. 3d 880, 883 (1993) (stating that "the teacher tenure provisions of the School Code are in derogation of common law and must be strictly construed in favor of the school district").

¶ 21   Although section 24-12(b) of the School Code is unambiguous, our determination here is also amply supported by legislative history. As the bill's Senate sponsor noted, the 2011 modifications to the School Code were designed to "[tie] tenure to teacher performance evaluations" as well as to "allow[ ] [for] an easier dismissal process for teachers who are not highly qualified." 97th Ill. Gen. Assem., Senate Proceedings, Apr. 14, 2011, at 292-94 (statements of Senator Lightford); see also 97th Ill. Gen. Assem., House Proceedings, May 12,

2011, at 5 (statements of Representative Currie) ("This [bill] will streamline the decision to dismiss a teacher who is ineffective and/or incompetent. It will connect performance *** and competence as the primary decision in *** teacher layoffs."). The legislation that became Public Act 97-8 unanimously passed the Senate, and only a single member voted against it in the House. Again, the responsibility for the wisdom or justice of this legislation rests with the General Assembly, not this court. *People v. Wright*, 194 Ill. 2d 1, 29 (2000).

¶ 22   We note that, as did the plaintiff in *Frakes*, plaintiff argues that the amendment to section 24-12(b) empowers school boards and school districts to arbitrarily dismiss teachers under a "pretext" of budget cuts and RIFs. The response from our colleagues in *Frakes* bears repeating, for here, too, plaintiff:

"ignore[s] multiple aspects of the statute that militate against a school board's potential to dismiss [teachers] 'on a whim,' including the fact that school boards do not conduct the performance evaluations [(they are conducted by trained evaluators)] (105 ILCS 5/24A-3 (West 2012)); the fact that the [School] Code also provides remediation procedures for teachers who receive unsatisfactory evaluations (105 ILCS 5/24A-5 (West 2012)); and the fact that section 24-12 of the [School] Code also provides procedures to review arguably questionable performance evaluations of senior teachers and public hearings [are] required if [the number of] dismissals based on economic reasons reach[es] certain thresholds (105 ILCS 5/24-12(b), (c) (West 2012)). Thus, contrary to the plaintiff['s] protestations, a school board cannot just 'freely dismiss' tenured teachers." *Frakes*, 2014 IL App (3d) 130306, ¶ 17.

Given the procedural and substantive safeguards that were added to the School Code in 2011, we reject plaintiff's unsupported assertion that school districts have *carte blanche* to dismiss teachers under the guise of a RIF.

¶ 23   Finally, both in her brief and at oral argument, plaintiff asserted that the District "targeted" her for dismissal and that the District dismissed her in "bad faith."   At oral argument, plaintiff further alleged that the RIF, which affected the employment of 19 other teachers, was a pretext that the District engineered solely for plaintiff's dismissal. These allegations were not raised in plaintiff's complaint in the trial court, and we decline to consider them now. See *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 500 (1985) ("It is axiomatic that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal.").

¶ 24   We conclude that the trial court correctly determined that the District honorably dismissed plaintiff in accordance with section 24-12(b) of the School Code. The District board decided at the end of the 2012-13 school term that a RIF was necessary for the upcoming school year. See 105 ILCS 5/24-12(b) (West 2012). The District notified plaintiff of her dismissal at least 45 days before the end of the term. *Id*. Accordingly, the trial court properly dismissed plaintiff's complaint under section 2-619(a)(9) of the Code.

¶ 25                                      III. CONCLUSION

¶ 26   For the reasons stated, we affirm the judgment of the circuit court of Lake County.


¶ 27   Affirmed.